UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WILLICK,

     Plaintiff,                   Civil Action No. 15-12406

        v.               District Judge LINDA V. PARKER
                          Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Thomas Willick ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Plaintiff's Motion for Summary Judgment (Dock. #9) be GRANTED and that the case be REMANDED FOR AN AWARD OF BENEFITS. I further recommend that Defendant's Motion for Summary Judgment (Dock. #10) be DENIED.

-1-

## PROCEDURAL HISTORY

On December 17, 2012, Plaintiff applied for DIB, alleging disability as of May 5, 2007[1] (Tr. 201). Following the initial denial of benefits, Plaintiff requested an administrative hearing, held on March 24, 2014 in Oak Park, Michigan (Tr. 41). Administrative Law Judge ("ALJ") Patricia S. McKay presided. Plaintiff, represented by attorney Donald Busta, Jr., testified (Tr. 47-67), as did Vocational Expert ("VE") Judith Findora (Tr. 67-78). On May 20, 2014, ALJ McKay found Plaintiff not disabled (Tr. 92-110). On August 14, 2014, the Appeals Council remanded the case for further consideration, finding that the ALJ's rationale for rejecting a treating physician's (Dr. Nabity's) opinion contained a mischaracterization of the objective findings (Tr. 112-113). The Appeals Council noted that the ALJ could request additional evidence "and/or clarification" of the treating opinion "as appropriate" (Tr. 113). The Appeals Council also stated that "[i]f warranted by the expanded record," the ALJ should "obtain supplemental evidence from a vocational expert . . ." (Tr. 113).

ALJ McKay held a second hearing on January 26, 2015 at which time Plaintiff supplemented his testimony (Tr. 29, 35-39). On March 18, 2015, ALJ McKay found that Plaintiff was capable of performing his past relevant work as a production manager (Tr. 22-24). On May 15, 2015, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on July 6, 2015.

---

[1]Plaintiff later amended his onset date to April 23, 2012 (Tr. 11).

-2-

## BACKGROUND FACTS

Plaintiff, born May 4, 1955, was 60 when ALJ McKay issued her decision (Tr. 24, 201). He completed 12th grade and worked previously as an "area manager" (production manager) (Tr. 134-135). His application for benefits alleges disability as a result of spinal stenosis and nerve problems in the legs and arms (Tr. 227).

### A.    Plaintiff's Testimony

### 1.  March 24, 2014 Hearing

*Plaintiff's counsel prefaced his client's testimony by amending the alleged onset date to April 23, 2012* (Tr. 45).

Plaintiff then offered the following testimony:

He lived in a one-story house in Sterling Heights, Michigan with his disabled wife (Tr. 48). He stood 6' 1", weighed 210, and was left-handed (Tr. 49). He had not used the basement of his house in over a year (Tr. 49). In additional to a high school education, he had taken college classes at a local community college (Tr. 50). His former managerial job at an automotive prototype company required him to attend meetings, fill in for absent workers in various departments, organize work schedules, travel to different plants, and participate in hiring and firing decisions (Tr. 51-53). He was laid off from his position in 2008 (Tr. 54).

His condition of spinal stenosis was characterized by pain radiating to both lower extremities (Tr. 54). The pain from his knees to feet was worse than the hip to knee pain (Tr.

-3-

54-55).  He had not left the house more than twice in the past year (Tr. 55).  He collected unemployment benefits for approximately one year after being laid off but had since been living off his savings and retirement account (Tr. 55).  He held a current driver's license but had not driven in two years (Tr. 56).

Plaintiff spent most of his waking hours alternating between standing, brief walking, and reclining (Tr. 56).  He required the use of a shower chair while bathing (Tr. 57).  Due to balance problems, he used a cane or walker and avoided leaving the house (Tr. 57).  He had declined a recommendation for surgery due to his lack of insurance and his fear of surgical complications (Tr. 59).  In addition to the stenosis, he experienced right shoulder tightness and anxiety (Tr. 60).  He took Morphine six times a day and experienced the side effect of drowsiness (Tr. 61).  He smoked between one and one-and-a-half packs of cigarettes each day and consumed three or four beers each week (Tr. 62).

In response to questioning by his attorney, Plaintiff testified that he had undergone numerous epidural injections since 2012 but did not experience relief for more than a few days (Tr. 65).  He reported that taking Morphine did not eliminate his pain (Tr. 65).  He estimated that he could stand or sit for 15 minutes before requiring a position change (Tr. 65-66).  He stated that leg pain obliged him to recline up to eight times a day (Tr. 66).  He testified that he would "consider" surgery, but would also "weigh some other options" (Tr. 66).

-4-

### 2.  January 26, 2015 Hearing

*ALJ McKay reexamined Plaintiff briefly at the second hearing.*

Plaintiff offered the following testimony:

Since the previous hearing he continued to take Morphine and undergo steroid injections (Tr. 35).  He had not attended classes or received additional job training since the first hearing (Tr. 35).  He experienced occasional falls (Tr. 36).

In response to questioning by his attorney, Plaintiff testified that he had scheduled a surgical consultation after having been recently approved for health insurance (Tr. 38).

### B.    Medical Evidence[2]

### 1.  Treating Sources

### a.  Records Predating April 23, 2012

May, 2008 imaging studies of the right shoulder showed minor osteoarthrosis (Tr. 452).  Imaging studies of the thoracic spine showed mild to moderate diffuse spondylosis (Tr. 452).  September, 2008 cardiological records state that Plaintiff admitted "to some occasional binge drinking" (Tr. 280).  June, 2010 treating notes state that Plaintiff took a fall while mowing his lawn and that he was "feeling very well" until the accident (Tr. 322).  X-rays of the lumbar spine show spondylitis spurs at L2 and L3 (Tr. 447).  August, 2010 treating records state that Plaintiff hurt his back stepping onto his boat (Tr. 321).  He reported

---

[2]Medical records pertaining to conditions unrelated to the disability claim, while reviewed in full, are omitted from the present discussion.

minimal relief from Vicodin (Tr. 321).   March, 2012 records by Ruth A. Rydstedt, M.D. state that Plaintiff's wife reported that he was "drinking heavily" (Tr. 320).

### b. Records Created During the Relevant Period

In April, 2012, Dr. Rydstedt opined that lower extremity neuropathy was secondary to alcohol abuse (Tr. 317).  However, an EMG performed the same month by Thomas Nabity Jr., M.D. were consistent with active and chronic lumbar radiculopathy (Tr. 302-302).  In May, 2012, Dr. Rydstedt observed that recent studies showed moderate degenerative spondylolithiasis of the thoracic spine and active and chronic lumbar radiculopathy at L4 through S1 and noted that a recent epidural injection was effective for only one week (Tr. 293, 302-303, 315, 446, 455).  Dr. Rydstedt found that Plaintiff's thigh pain was consistent with spinal stenosis, noting "some arthritis and spasms" (Tr. 294-295).   Treating notes by Dr. Nabity note the presence of low back pain and radiculopathy (Tr. 465).

Dr. Rydstedt's June, 2012 records note a history of chronic back pain (Tr. 292).  The following month, Dr. Nabity administered a second injection (Tr. 464).  In October, 2012, he sought treatment for broken ribs (Tr. 291, 313).  In November, 2012, Plaintiff sought treatment for kidney stones (Tr. 288-289, 310, 387).  The same month, a CT of the brain showed unremarkable results (Tr. 297, 444).   In December, 2012 and January, 2013, Dr. Nabity administered steroid injections (Tr. 462).

In January, 2013, Dr. Nabity completed an assessment of Plaintiff's work-related abilities, restricting lifting to 10 pounds on an occasional basis; standing or walking to less

than two hours in an eight-hour period; and sitting for less than six-hours (Tr. 467). Dr. Nabity found that Plaintiff experienced restrictions in lower extremity pushing and pulling on the basis of MRI reports and "strength exams" (Tr. 467). He precluded all climbing, balancing, kneeling, crouching, and crawling due to frequent falls resulting from severe stenosis (Tr. 467). He found that vibration, humidity, height, and temperature extremes could cause the symptoms to worsen (Tr. 468). In May, 2013, Dr. Nabity administered another steroid injection (Tr. 481). In July, 2013, Plaintiff reported generally good health (Tr. 485). The same month and in August, November, and December, 2013, Dr. Nabity administered steroid injections without complications (Tr. 487, 489, 494, 497). Dr. Nabity's December, 2013 notes show that Plaintiff was prescribed MS Contin and Percocet for back pain (Tr. 504).

In December, 2013, Dr. Nabity, M.D. composed a disability opinion, noting severe nerve root compression at L5-S1 due to disc herniations and spinal stenosis (Tr. 477). He found that Plaintiff was currently unable to perform even sedentary work (Tr. 477). Dr. Nabity opined that Plaintiff's prognosis for returning to work would be "excellent" if he underwent surgery (Tr. 477, 499).

### c. Records Created After the December 31, 2013 Expiration of DIB

In March, 2014, Dr. Nabity administered a steroid injection (Tr. 529). Dr. Nabity's July, 2014 records note Plaintiff's report of level "7-8" back pain on a scale of 1 to 10 (Tr. 531). Plaintiff reported that he was unable to continue with injections due to financial

-7-

constraints and was using a cane given to him by a friend (Tr. 531). In August, 2014, Dr. Nabity reinterated that Plaintiff was incapable of performing even sedentary work (Tr. 507). He noted that while Plaintiff had been unable to afford an MRI, EMG studies were consistent with lumbar radiculopathy from L4 through S1 (Tr. 507). In October, 2014, Dr. Nabity noted that Plaintiff had developed bed sores (Tr. 535). A December, 2014 MRI of the lumbar spine showed "moderate central canal stenosis and compromise of the L5 nerve roots" (Tr. 540). An MRI of the cervical spine showed severe stenosis with nerve root compromise at C6 (Tr. 554). The same month, Dr. Nabity administered a steroid injection (Tr. 541). EMG studies showed bilateral Carpal Tunnel Syndrome ("CTS") and bilateral radiculopathy at C7-C8 (Tr. 550). Treating records by John Santa, D.O. note Plaintiff's report of upper extremity weakness and tingling (Tr. 543).

In January, 2015, Dr. Nabity once again opined that Plaintiff was disabled, noting MRIs of the cervical and lumbar spine showing severe stenosis; EMGs of the upper extremity showing significant nerve damage; and Plaintiff's failed response to conservative treatment (Tr. 548).

### 2. Non-Treating Sources

In March, 2013, Ernesto Bedia, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of long-term lower back pain (Tr. 469). Plaintiff reported that he could sit for up to one hour in a chair and "drive for half . . . an hour in his pick-up truck (Tr. 469). Dr. Bedia noted the absence of muscle spasms and a stable

gait (Tr. 470). He observed a full range of movement (Tr. 471).

In April, 2013, Muhammad Ahmed, M.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for up to six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 87). He found that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 87-88). He found that Plaintiff could return to his work as a production manager as the job was "generally performed" in the national economy (Tr. 89).

### C. Vocational Expert Testimony

VE Judith Findora classified Plaintiff's past job as a production manager as skilled and exertionally light (exertionally medium as performed)[3] (Tr. 68). She testified that Plaintiff had the transferrable skills of "general clerical skills, business math, budgeting skills, advanced communications, supervision skills, computer usage, report writing, file maintenance, manufacturer, manufacturing processes, and . . . human resource development

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

skills and hiring, training, evaluating and terminating employees" (Tr. 69). The VE found that Plaintiff would require more than 30 days to adjust to a new position (Tr. 70). ALJ McKay then described a hypothetical individual of Plaintiff's age, education, and work experience limited to exertionally light work with the following additional restrictions:

> This person needs to be limited to occasionally climbing stairs, crouching and crawling, kneeling and stooping and bending. Those types of environments. He would need to avoid work place hazards, which would be dangerous moving machinery, unprotected heights or climbing ladders. He would be unable to use foot controls (Tr. 71).

The VE testified that the above limitations would allow for Plaintiff's past relevant work as a production manager as the position was performed in the national economy insofar as the position would be limited to a "prototype environment" (Tr. 73). She found that the former job of production manager would allow for an adjustment to the exertionally light positions of production clerk (2,100 positions in the regional economy); automotive service technician (Tr. 1,200); and assemblers (5,500).

The VE testified that none of Plaintiff's skills were transferrable to the sedentary level (Tr. 74). She stated that none of above-stated positions would allow the individual to work at his own pace or use a cane (Tr. 74-75). She testified that the need for a sit/stand option would eliminate the production manager and auto technician positions, reduce the production clerk numbers by 50 percent and the assembler numbers by 60 percent (Tr. 75-76). The VE testified that if Plaintiff's testimony were fully credited, he would be unable to perform any of the jobs due to his need to recline multiple times a day and the inability to stay on task (Tr.

-10-

76).  She stated that her testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*")  and *Selected Characteristics of Occupations* (Tr. 76-77).

### D.  The ALJ's Decision

Citing the medical records, ALJ McKay found the severe impairments of "multilevel degenerative disc disease of the thoracic and lumbar spine; lumbar radiculopathy; and history of alcohol abuse," but that none of the impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-16).  (Tr. 13).  She found that the condition of anxiety was non-severe (Tr. 14-15).  She found that Plaintiff retained the residual functional capacity ("RFC") for light work with the following additional limitations:

> [No more than] occasional crouching, crawling, stooping, kneeling, bending, and climbing stairs; jobs that avoid workplace hazards such as moving machinery, unprotected heights and climbing ladders; as well as work that avoids operating foot controls (Tr. 16).

The ALJ found that Plaintiff could perform his past relevant work as a production manager and the exertionally light jobs of production clerk, automotive service technician, and assembler (Tr. 22-23).

The ALJ discounted the allegations of disability, stating that Plaintiff denied back and lower extremity problems on numerous occasions (Tr. 18-19).  She noted that Dr. Nabity's disability opinion was unaccompanied by clinical examination findings (Tr. 19).  She also noted that Dr. Nabity's August, 2014 opinion post-dated the December 31, 2013 expiration of benefits (Tr. 19).

-11-

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6ᵗʰ Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6ᵗʰ Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6ᵗʰ Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff disputes the finding that he is capable of performing either his past relevant work, jobs using transferrable skills, or any other exertionally light work. *Plaintiff's Brief,* 7-9, *Docket #9.* He disputes the RFC crafted by the ALJ, contending that the treating records overwhelmingly support the conclusion that he is unable to perform light work. *Id.* Plaintiff argues that the RFC for light work is tainted by the ALJ's erroneous rejection of Dr. Nabity's multiple disability opinions. *Id.* at 7.

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir.2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account"

-13-

*Id.* (citing 20 C.F.R. § 416.945); § 404.1545. In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

The ALJ determined that Plaintiff could perform his past relevant work or jobs using transferrable skills at Step Four of the sequential analysis (Tr. 22-23). The fact that she found that Plaintiff was unable to do his former job "as performed" did not by itself prevent a finding of non-disability at Step Four. A Step Four determination can be supported by the finding that claimant can perform past relevant work as "actually performed," or, "as generally required by employers throughout the national economy". SSR 82–61, 1982 WL 31387, *2 (1982). At Step Four, claimant "bears the burden of proving the existence and severity of limitations" and that "he is precluded from performing [the] past relevant work" either as previously performed or as generally required in the national economy. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).

The ALJ accorded "no persuasive weight" to Dr. Nabity's multiple opinions of disability. In support of her finding, she found that the Dr. Nabity's opinions were unsupported by the treatment notes and Plaintiff's own account of his condition (Tr. 19-20). She stated that Dr. Nabity's August, 2014 letter detailing the physical limitations did not indicate whether Plaintiff experienced the limitations prior to the December 31, 2013

-14-

expiration of benefits.

The ALJ acknowledged that Plaintiff sought treatment from Dr. Rydstedt in April, 2012 for back pain with lower extremity weakness and that an EMG of the lower extremities (performed the same month by Dr. Nabity) showed bilateral chronic lumbar radiculopathy (Tr. 303). In contrast, the ALJ's account of the subsequent medical evidence and Dr. Nabity's multiple disability opinions reflect a myopic, if not distorted reading of the record. The ALJ found that a June, 2012 examination was "completely normal" (Tr. 18). However, the cited records primarily address Plaintiff's long-standing conditions of heart problems and elevated blood sugar rather than the back condition (Tr. 292). At no point did Plaintiff allege work-related limitations resulting from either condition (Tr. 227). The same treating records actually state that Plaintiff continued to experience "chronic back pain" (Tr. 292). While the ALJ discounted Dr Nabity's opinion on the basis that the injection records did not include any diagnostic findings, his records from July, 2012 forward state a diagnosis of "low back pain" with "radiculopathy," which is wholly consistent with his EMG findings (Tr. 465, 479, 481).

The ALJ made additional erroneous findings. She cited Dr. Rydstedt's November, 2012 report, noting that Plaintiff "admitted that he was no longer having any back pain" (Tr. 18). However, Dr. Rydstedt's notes, stating that Plaintiff had "no further back or *abdominal* pain," actually refer to pelvic/back pain resulting from a kidney condition (Tr. 288-289, 298)(emphasis added). While the ALJ cited Dr. Nabity's July, 2013 notes stating that

-15-

Plaintiff admitted "good health," the review of systems was apparently generated for the purpose of clearing Plaintiff for additional epidural injections (Tr. 485), to address his chronic back pain and radiculopathy. More obviously, the ALJ fails to note that Plaintiff did not visit the neurologist and submit to a review of systems check to report "good health," but rather, to obtain another epidural injection for the clinically confirmed condition of lower extremity radiculopathy (Tr. 485). Likewise, the ALJ's citation to August, November, and December, 2013 records showing a lack of joint pain, swelling, or stiffness omits recognition that the review of systems was generated for the purpose of clearing Plaintiff for additional injections (Tr. 18).

The ALJ's rejection of Dr. Nabity's January, 2013, December, 2013, August, 2014, and January, 2015 opinions is also based on a strained interpretation of the record. The ALJ accorded "no persuasive weight" to Dr. Nabity's statements on the basis that he "never once provided any physical or clinical examination findings in his treatment notes to translate that objective evidence into any function by function limitation[]" (Tr. 19). However, as noted above, Dr. Nabity performed the April, 2012 EMG studies and made the original diagnosis of lower extremity radiculopathy. Subsequent injection records by Dr. Nabity note that same diagnosis. Dr. Nabity's January, 2013 work assessment states that his findings were based on MRI reports and "strength exams" (Tr. 467). Although the medical records indicate that Plaintiff did not obtain an MRI until December, 2014, there is no reason to doubt that Dr. Nabity performed strength assessments during at least one of Plaintiff's multiple treatment

-16-

sessions which began in April, 2012 after the EMG tests showed radiculopathy.   While Plaintiff had not obtained an MRI as of the date of Dr. Nabity's December, 2013 disability opinion, Dr. Nabity's finding that Plaintiff experienced "severe nerve root compression" due to disc herniations was wholly confirmed by a later MRI showing compromise of the L5 nerve root (Tr. 540).

Likewise, the ALJ's rejection of Dr. Nabity's August 27, 2014 opinion on the basis that he did "not indicate that the findings date prior to the date last insured," (Tr. 19, 507) does not constitute "good reasons" for discounting the treating opinion. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013); *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)(ALJ must provide "good reasons" for discounting a treating source's opinion).  Dr. Nabity  letter states explicitly that he composed the letter in the response to the Appeals Council's August 14, 2014 remand order for additional evidence "and/or clarification" of his *previous* opinion, composed prior to the December 31, 2013 expiration of benefits (Tr. 113).  The August, 2014 letter in which Dr. Nabity states that he "would like to add" to his December, 2013 statement implies that he is referring to Plaintiff's condition before the expiration of benefits. (Tr. 507).[4]

_____

[4] Even assuming that the ALJ was confused as to whether the letter referenced Plaintiff's condition prior to December 31, 2013, the proper remedy would be to contact the physician for clarification.  20 C.F.R. § 404.1520b(c)(1).  The ALJ's failure to recontact Dr. Nabity for clarification is particularly troublesome, given that theAppeals Council earlier rejected her original basis for discounting Dr. Nabity's opinion (Tr. 112-113).  Standing alone, the ALJ's failure to inquire whether Dr. Nabity's opinion letter of August, 2014 refers to Plaintiff's condition prior to the expiration of benefits cast doubt

The ALJ's heavy reliance on Dr. Ahmed's April, 2013 non-examining review of the medical records is also problematic (Tr. 20). First, Dr. Ahmed's conclusion that Plaintiff was capable of exertionally light work was made without the benefit of either the later records showing that Plaintiff continued to receive steroid injections through the date last insured of December 31, 2013, or Dr. Nabity's December, 2013 finding that nerve root compression prevented even sedentary work (Tr. 477). As a rule, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings).[5] The records post-dating Dr. Ahmed's assessment show treating opinions of greater physical restriction, additional steroid injections, and prescriptions for opioid pain medication (Tr. 477, 504). The increased weight accorded to updated medical information is especially appropriate here, where in contrast to Dr. Ahmed's findings, much of the newer evidence was provided by a treating source. *See Sayles v. Barnhart*, 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004) (adoption of "outdated and inadequate" non-treating findings created prior to a diagnosis of diabetes constituted error).

────────────

on her treating physician analysis.

[5]The fact that in *Hamblin* the "outdated" report was five years old and Dr. Ahmed's report was created approximately 20 months before the expiration of benefits does not change the analysis. The treating records, disability opinions, and imaging studies post-dating the April, 2013 review reflect a greater degree of limitation.

Second, while the record indicates that Plaintiff was unable to afford an MRI before the end of the relevant period, the MRI of the lumbar spine taken the following year is entirely consistent with Dr. Nabity's earlier restrictions (Tr. 540). The treating records do not contain any indication that Plaintiff's condition deteriorated dramatically in the 11 months following the expiration of benefits. As such, although the study post-dates the expiration of benefits, it is probative of Plaintiff's condition before December 31, 2013.

Moreover, the ALJ failed to acknowledge the significance of other evidence supporting the well-documented limitations resulting from the Plaintiff's spinal condition. For example, while she noted that Plaintiff sought treatment for "a sore on his buttocks," she neglected to point out that he received a diagnosis of "bed sores" resulting from sitting in one position for extended periods due to back pain (Tr. 508, 535). The ALJ cited Dr. Bedia's March, 2013 consultative report stating that Plaintiff could drive his truck for half an hour to discredit Plaintiff's March, 2014 testimony that he had not driven in two years (Tr. 21, 56). However, it is unclear from Dr. Bedia's notes whether Plaintiff had actually driven in the year before the consultative examination (Tr. 469). As such, the consultative report and Plaintiff's testimony are not necessarily inconsistent. Certainly, Dr. Bedia's account does not state that Plaintiff was able to drive regularly or for any extended period. The treating records documenting ongoing back problems, the imaging studies, and the diagnosis of bed sores resulting from inactivity strongly support his claims that he was immobilized by the back condition.

-19-

For these reasons, a remand is required. Where "all essential factual issues have been resolved," a remand for an award of benefits is appropriate. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994). The Commissioner "faces a heavier burden when denying disability benefits to older claimants." *Preslar v. Secretary of Health and Human Services*, 14 F.3d 1107, 1111 (6th Cir.1994). "People of advanced age (55 and over) are considered at an age which significantly affects their ability to do substantial gainful activity; if they are severely impaired and cannot do medium work, they must have skills that can be transferred to less demanding jobs which exist in significant numbers in the national economy" to avoid a finding of disability. *Id.*; 20 C.F.R. § 404.1563(d). Thus, a finding that Plaintiff, 58 at the date last insured, is unable to perform any of his past relevant work, does not possess transferrable skills, and is restricted to exertionally light or sedentary work would direct a finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.04.

The record in this case shows that this 58-year-old Plaintiff, who suffers from well-documented and long-standing, intractable back pain, has met his Step Four burden of showing that he is incapable of performing his past relevant work. The record does not support a finding that he could perform more than sedentary work. It is important to note that the VE testified that Plaintiff would be unable to perform his past relevant work at the sedentary level, or jobs using his transferrable skills (Tr. 74). Therefore, the ALJ would be precluded from making yet another Step Four finding.

-20-

The ALJ's finding of non-disability is not supported by substantial evidence, and the Plaintiff is therefore entitled to a remand for an award of benefits.

## **CONCLUSION**

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment (Dock. #9) be GRANTED and that the case be REMANDED FOR AN AWARD OF BENEFITS, retroactive April 23, 2012. I further recommend that Defendant's Motion for Summary Judgment (Dock. #10) be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 14, 2016                     s/R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

---

CERTIFICATE OF SERVICE

I hereby certify on June 14, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants June 14, 2016.

                                         s/Carolyn M. Ciesla
                                         Case Manager for the
                                         Honorable R. Steven Whalen